Good morning everyone. To start with, may I say we're very pleased and honored to have sitting with us this morning Judge Ward of the United States District Court for the Eastern District of Texas. Welcome Judge Ward. Thank you. First case this morning is number 07-1050 Hyatt v. Dudas. Mr. McManus. In each of the 12 involved applications here, Hyatt deleted or significantly amended all of the initially filed claims. The examiner examined those later added claims and determined that they were not described in the specification. Accordingly, he rejected them under 112 because they were not described. Hyatt appealed that rejection in each of these applications to the board, and in doing so, he did not argue the claim separately under 37 CFR 192 C7. He argued some of them separately, didn't he? That's correct, and those would be the claims that the board chose and selected as representative of the written description rejection. So isn't the real question of how much of an argument one needs to put in in order to get the benefit of having presented separate arguments in order to get a separate reaction from the board? Well, that's not the issue in this case. That issue, that is the predicate question under Rule 192 C7, and that issue was briefed, and the district court here agreed with the board in determining that the conceptual matrix, to use Hyatt's term, that he maintained was his separate argument for the claims rejected under 112 entitled him or forced the board to consider the merits of all those claims. The board rejected that argument, which is exactly why they invoked the representative claims Rule C7, and then in the subsequent 145 action, the district court agreed with the board that Hyatt had failed to separately argue the claims as required under Rule C7, and accordingly, the district court here actually agreed with the board that grouping of claims and the use of representative claims was proper. That issue is not on appeal. We don't have any bone of contention. That's eminently correct. The issue is then once you conclude, as we must here, that Hyatt has not separately argued any of the claims and that the only claims he's argued regarding the merits of the written description rejection are those that the board used as representative, must the board do more? The district court tells us that the board must, even where Hyatt refuses to argue any but the representative claims under the district court's reading of our own regulation, the board is now forced to consider more rec claims, claims that Hyatt has never argued, and must do so thus without any argument from Hyatt. That is not a reasonable reading. But is Hyatt going to agree with you that he never argued that the general grouping in the discussion of the matrixes and so on and the stating what the different claims were directed to were sufficient argument? Hyatt agrees with us that that issue is not before this court. He says as much in his brief. However, he does have some token argument in there that well, look at my argument about the claims. Needless to say, we address it in our reply at page 15, footnote 4. At page 30, Hyatt makes the assertion that quote, I made extensive arguments as to all the rejected claims. That issue is not on appeal. And needless to say, if you look at, for example, we started to A450. But if he made extensive argument, then what are you complaining about? He says he made extensive argument. That argument was not claim specific argument as required by the rule under C7. That's what the board told Hyatt. That's what the district court told Hyatt here. Once the district court reached that conclusion, if you look at the language of C7, it's an to have all of his rejected claims considered. The way he does that is by making separate arguments regarding the merits of that rejection. If he fails to do that, and Hyatt has not done that here, the board shall use representative claims. The district court agreed with us up and until that point. They agreed representative claims here was proper because Hyatt did not carry his burden under the rule. That issue is not before this court. The issue is once you based on that conclusion, what must the board do? The district court says, despite the fact that he did not carry his end and make the separate arguments required by the rule, the board has to do more. And that is not a reasonable reading of C7. Once the board took the arguments that Hyatt made, in some cases he used one representative claim. In some, if you look at the 633 application and the 072 application, he used four representative claims. The board gave him all four. The board simply took the scope of the appeal, as Hyatt argued it, and adjudicated the merits or heard the merits of the written description rejection and affirmed. That's what C7 tells us to do. Once Hyatt or the applicant fails to carry their end of the bargain and separately argue the claims. So there's no reason why the board should then have to invent arguments for the applicant that he has never made about the claim. If he, for whatever reason, chose not to make them himself, that is his burden under the rule, under the practice. If you don't make an argument, you've waived it. And that's what C7 embodies, and that's what 192 as a general rule embodies. It's a rule of waiver. We will consider your appeal to the extent you argue it and anything else. We'll assume that if you wanted us to hear it, you would have made the argument. Now, the district court grasped this burden onto C7 that the board has to, even though Hyatt hasn't done it himself, the board has to do this additional argument. It's all based on the court's reading of McDaniel. But McDaniel simply carved out a very narrow exception to the rule of waiver embodied in the representative claims rule in C7. It says, using the representative claims is fine, but where you begin to take 103 in McDaniel, it was, you've taken claims only rejected under 103 and, in essence, issued a new ground rejection by affirming them using the analysis of 102. That's an apples and oranges fit for the purposes of representative claims. You can't take claims that have never been rejected under 102 and affirm them on that ground. That goes too far, it's a violation of section six. Subject to that exception, the rule of waiver still exists in C7, and that exception does not apply here. Every single one of these claims that was affirmed using the representative claim was rejected under 112. Mr. McManus, what kind of specificity does the board have to establish or the PTO have to establish in rejecting the claim under the generic term of written description? Does it have to specify as to where the written description is deficient? Well, that's the issue that this court addressed in Hyatt One, and this court said it is eminently proper, given the nature of the written description rejection, that if upon reviewing the specification, if the PTO cannot find the claim as described, the words of the claim and whether they're described, it is eminently reasonable to basically say as much and put the burden, shift the burden to the applicant. Why? Under the statute, it's the applicant's responsibility at the fore to describe his claims in his originally filed specifications. So putting that burden on the applicant is eminently reasonable. That happened here. The examiner explained to Hyatt, I can't find your claims. Please tell me where they're described. He took that. He didn't say anything to the examiner. The examiner finally rejected the claims. And in appealing that rejection up to the board, he said, here's one claim. I'll read claim, taking the 549 application, which was the only application the district court actually discussed. Here's claim 150. The board looked at claim 150 and his arguments as to where that claim was described, didn't find it and affirmed the rejection. But the So if you refile the case with different claims, they then are included in the specification. And the issue in that case arises with respect to priority and intervening references as to if you, let's say that you add a claim, which states subject matter, which is not in the same words or all that clearly included in the specification you've already got. And you refile the case. You now have a new filing which contains that subject matter. Whether a claim can describe itself and provide its own written description is another interesting question. But the issue only arises when you are seeking priority to go back to the earliest dates. Now, that may be an issue here because we observe that these cases have been pending for a might be a factor, but that really wasn't a factor in the rejection before us, as I understand it. Well, every one of the claims, all 2400 across the 12 applications involved here are later added claims. There are no original claims pending. Yeah. So in that instance, and the PTO, as we discussed in our great group, the PTO has expressed there's the question is called as to whether these claims which you did not include in the original specification are in fact described. And it should be pointed out, this isn't the typical written description situation. This isn't you have six limitations in your claim and I can't find the sixth. Mr. Hyatt's prosecutorial conduct is to, whenever the examiner says something, he just deletes and adds, as opposed to addressing the merits of the description. That's how we end up from 24 claims, which is what was originally as part of this file spec in 95, with 280. But that's not all that unusual, is it? It may not be what everyone does, but it's not prohibited. It's not prohibited per se, but it is unusual. In the experience of the director, this is not... If it's not prohibited, then you're not saying that therefore, this is a basis for rejecting them because... It's not the sheer number, at least in this case, there's no issue as to the sheer number. The reason the number matters is because when you have something like this, where we continue to try to engage Mr. Hyatt on where his claims are described, and he refuses at every stage, and then when he finally decides to step out of the box and take a shot at one of the claims, he does one of 280. The notion that the board should then fix or otherwise add claims that he's chosen not to argue under a representative claims rule, which as this court in McDaniel noted, is a rule of procedural expediency, which basically says, if the board is confronted with a rejection, that the applicant can argue the merits of that rejection to the extent he or she sees fit. The board is entitled, where the applicant does not make arguments about the claims, to say, I understand you to tell me that the ones I need to look at are the ones you have argued, and I will adjudicate the merits based on the claim or claims that you have put before me. And that's exactly what happened in every application here. Okay. But does... Well, I was going to say... Oh, I see. Oh, I'm sorry. But doesn't C7 really require, not only to give you the ground for rejection, the statutory requirement, but also the reason why a claim is rejected? Well... So you can say it doesn't meet 112 or 102 or 103, but you also need to be specific as to the rejection itself. A couple of responses, Your Honor. First, the ground of rejection actually isn't defined by the regulation itself. And if that were true, that every nuance of, for example, the written description of rejection here, was unto itself a ground of rejection, that even where the applicant made no argument about it, the board was obligated to consider it, you would have no representative claims rule. And more to the point, what you'd have is a situation where the applicant could make no argument and the board would be constrained under this reading of the regulation to make arguments for the applicant and consider the merits of the rejection. That is not consistent with the regulation, that's not consistent with the waiver case law, this court's representative claims... But there's no issue here that no argument was made. That is correct. I'm merely saying that if this reading is accurate... Well, that's what the law is about. You carry anything to an extreme and you suddenly reach the point where it no longer applies. I think that's inappropriate. Okay, we'll save your rebuttal time, Mr. McManus. Thank you. Mr. Bass. Good morning, Your Honor, may it please the court. I'd like to begin with addressing the jurisdictional argument that Mr. McManus did not address at all, because I think there is a serious jurisdictional issue in this case. I know the PTO is of the view that jurisdiction in this case is controlled by the panel decision in this case, but I submit that that is a dangerously erroneous argument. The PTO's argument overlooks the fact that in Hyatt One, this court reaffirmed the long standing rule of the Cabot Court case from 1986, that a remand for further agency proceedings is generally not a final judgment. And that principle had been upheld consistently by the court as recently as 2006 in Hyatt One, the panel noted that in rare situations, there was an exception to that rule of non-appealability, and said that the exception would be applied judiciously. The problem here is that if the PTO's argument for jurisdiction is accepted in this case, it will no longer be a rare exception. It will be the rule that every remand is subject to an immediate appeal. Why? Because the PTO's argument for appealability is simple. I'm going to complain about the same thing I just mentioned to Mr. McManus. To say that if you do something here, therefore forever you're going to do something unusual or extreme, I think let's just talk about this case. And the reasons why the PTO says that they should be entitled in this case to have an appeal. Just do it. I'll talk about this case, but it's important when the court writes an opinion that its principles of appealability extend not just to this case, but to other cases so that the courts and the litigants have guidance as to when it is appealable and when it is not. But we need to be circumspect, I agree. And the problem in this case is that their appeal argument, in this case, is that we have a right to an appeal because the court ordered us to do something we don't want to do. And therefore, we have an appeal to get a determination from this court whether the district court was ordered, was a free remand case. And therefore, it's not an argument that can be accepted because to accept that argument is in effect to overrule Cabot, to overrule the consistent precedence. No, they say the court ordered them to do something of enormous burden and time-consuming and effort in this case, and which they didn't have the record on which they could do it. The burden on the PTO from providing the court with an adequate record to do so is a reason for departing from the non-appealability rule. But let me get to the merits. Because the merits of this case really depend on how you look at the case. The PTO looks at this case as if this is an issue of procedure as between the PTO and the applicant. It's not. It's an issue of procedure as between the court and the PTO. This was a 145 action. And as the panel knows, when you're in a 145 action, the district court, unlike this court on the direct appeal, sits in a position of being both a trial de novo reviewing body and an appellate reviewing body, because it's entitled to receive new evidence. Now, in considering what Judge Kennedy held in this case, and by the way, all he did was apply for dangles. He didn't create new law. It's important for the panel to recognize that this is not the only Hyatt-Dudas case that was before Judge Kennedy. Last April, I argued the appeal here in 2007-1066. That case was also before Judge Kennedy. And that resulted in a decision that he rendered in September of 2005, a year prior to the decision in this case. It also involved an issue over 112, sufficiency of description. In that case, unlike this case, what the board had done was to group the claims in certain logical groups, which considered all of the limitations, which were present in all of the claims, so that by its grouping, it provided the district court with a record on all relevant limitations. Judge Kennedy knew that, and had seen that way of the board's proceeding. And he reached the merits in summary judgment and said the board's rejections were upheld. The validity of that decision is sub judice from the April argument. But the important point is that to the judge, when he was presented with that case, he had a coherent record from the PTO, one that said, here are the groupings. These groupings encompass all the relevant limitations. And therefore, we have advised you, as to our view, on every claim. That's not what happened here. In this case, the PTO's decision was to pick out very few of the 2,400 claims, pick out only 12 of those claims, to decide that, based on the limitations in those 12 claims, all 2,400 claims were rejected as lacking foundation in the statute. I thought it was 21 representative claims that were selected by. I'm sorry, you're right. It was 12 applications. I misspoke. It was 21 representative claims. Now, who selected those claims? The board. The board did. The board selected them because McDaniels makes it clear that it's the board's obligation to select a representative grouping of claims, even when the applicant has specifically disclaimed that grouping. And that's the important point that undercuts the entirety of the waiver argument from the PTO. They contend that higher grouped claims. First of all, it's important to note, and we point out in the brief, that Mr. Hyatt's groupings of the claims was not for claim argumentation purposes, but was to comply with the rules that, in the beginning of the brief, you need to give an overview of the invention. These are voluminous applications, 2,400 claims and 12 applications, hundreds of pages of specifications. He attempted to give an overview by selecting a small number of claims and giving that overview. But then, in his briefing, he did go through limitation by limitation to argue all the relevant limitations. The PTO's complaint is that he didn't argue claim by claim. He instead argued limitation by limitation. McDaniels ends with a proposition that C7 is a rule that has two separate obligations. One obligation is on the applicant. And we have not appealed from Judge Kennedy's decision that Mr. Hyatt failed in his obligation to present a proper grouping. But more importantly, the McDaniels opinion stands for the proposition that the board has an independent duty that cannot be waived, regardless of what the applicant has done, to make a proper grouping of claims. And what the board did in this case was to select claims which  were not subject to the application.  subject to the obligation to present a proper grouping of claims. Well, going back to the same question I asked Mr. McManus, what kind of specificity does a PTO or the board have to make for the grounds of rejection? Does it have to go beyond the written description failure and specifically indicate where the written description was indefinite or otherwise? We believe it does. Or does it just have to say it fails for written description in this particular group? We believe it does have to go beyond the specificity as it did in the Hyatt 2 case, the April argument. Now, the PTO takes the position that Hyatt 1 controls this. The problem is with that position, I think, is Hyatt 1 really addresses the relationship of the applicant to the examiner. What can the examiner do? And what does the applicant then have to do? And the panel's decision in Hyatt 1 was that the examiner can, in appropriate cases, simply say, I can't find it. Help me. And the burden shifts to the applicant to come forward and point it out. That's not the rule at the board level. The rule at the board level, and 192C7 is specific in this regard. McDaniel makes it clear. The board has an independent obligation, regardless of what the applicant has done, to make a sufficiently segmented decision so that a reviewing court has the expertise of the administrative agency to consider when it has the case before it. But it can't go beyond what the examiner has done. Oh, yes, it can. And when it does, it issues, as McDaniel points out. With respect to specificity, but not with respect to the grounds of rejection. No, it can consider new grounds of rejection, too, which triggers the output. But it has to be included in the record before they can do that. It is. But in a 112 case, you've got the entire specification. You've got all the claims. It's going to be in the record in any situation. They can take a totally fresh look at 112 appropriately. And that's what they did in Hyatt 2. Now, can the board take a look and say, well, it's not really written description that's enabled it? The board can. But that creates a new ground of rejection, which entitles the applicant to a rehearing before the board, or to go back and to reopen the prosecution before the examiner under 196. In a situation like that, would they just send it back to the examiner for reconsideration on the new grounds? Or would they just proceed to provide a rehearing? My understanding of the rules is that they can render the decision on the new ground. And then it's the applicant's choice whether to petition for rehearing and argue against the new ground, or to go back to the examiner to reopen prosecution under 196. Now, we have an amended rule that's come up. And it doesn't apply to this case. But if it did, would that rule help you? Or would it require you to? Judge Carson, I'm candid to concede I haven't looked at the amended rule that doesn't apply to this case to see how it would affect it. Because there are some major changes in that rule. There have been. But this case is governed by the law. Well, by the old rule, right. And again, it gets back to the issue of what does the PTO have to do to enable the court to make the decision. Judge Kennedy was explicit. He said on the last page of his decision that the PTO's decision left the court without an adequate record to review. And it's plain why he concluded that. He had 2,000 and 2,400 claims before him. He already implicitly was ruling that all of those claims were before him. He was rejecting the board's position that only the 21 representative so-called claims were before him. If he had accepted the PTO's position that the review was limited to those 21 claims, he would have had no reason to remand. But he had a reason to remand because he needed, in the first instance, the board, the agency's expertise in deciding the 112 issue with respect to all the claims. And they could have done that under these applications by taking limitations, making a selective grouping, such that their grouping encompassed all the claims that were issued. Let me just make sure that I understand what happened here. We have the final rejection in the appeal. So Mr. Hyatt goes first in filing his reasons as to why the examiner should be reversed. So in that document, there is a burden upon the appellant, the petitioner, to state all of the reasons why the examiner was wrong. So if the examiner had said that there's inadequate written description, isn't the burden of coming forward with stating otherwise initially on the appellant, on the applicant? It then behooves the board to do what the regulations to respond to group, if grouping needs to be done, or whatever else. But if an issue hasn't been placed in contention on the initial appellant's statement, then it's out of contention, isn't it? Is there a burden on the board to do more than what has been presented? Two responses, Judge Newman. One, Mr. Hyatt didn't meet that burden. He met the burden by presenting on a limitation by limitation basis the parts in the specification that supported each of the numerous limitations, hundreds of pages of presentation to that effect. What he didn't do, and what the PTO complains of, is he didn't himself regroup those limitations claim by claim. He didn't match the limitations to the claims in a grouping methodology. He said, and the district court rejected, we don't appeal from it. The district court rejected his presentation, which was to say, here are the limitations, here are the claims, and here's a table that shows where the claims appear, where the limitations appear. And you can construct the grouping from that. District court said that was inadequate. But the second point, and I think perhaps a more important point here, is that McDaniel has already decided the issue. McDaniel clearly, over Judge Mayer's dissent, held, 2 to 1, that even where the applicant had agreed with the board's grouping, and in effect waived any arguments for different grouping, the board has an independent duty, under the rule, to make a proper grouping. And the reason for that is, to me, although it's not expressed in McDaniel's opinion, and it is implicit in Judge Kennedy's opinion, the reason for requiring the board to make an intelligent grouping of the limitations is to provide the reviewing court with the agency's expertise in a relevant manner. And it simply doesn't help the court when the agency picks out a small subset of claims, a small subset of limitations, as it did in this case, review those limitations for support in the specification, and then reject a whole raft of other claims which share none of the common limitations. Because it simply can't be that the fact that the application lacks support for one limitation means it necessarily lacks support for every limitation in the case. But if, in fact, the group that's been made has all of the limitations, would that be sufficient if it's a representative group, and both parties agree that it is a representative group? That would be sufficient whether they agree or not, and that was the case in Hyatt 2. Right, that was in Hyatt 2. That's correct. Now, as I understand it, you have, you allege that there are different limitations that were not identified in all of the claims. What you're asking the PTO to do, as I understand it, is take all 2,400 claims, identify all of the limitations in each one of the claims, and then group them together? No, I think the limitations were identified by Mr. Hyatt in his extensive briefing, particularly in his reply briefs. He went through a considerable length. In each one, there were about 12 volumes of what I have in chambers, but at least looking at the specific aspects of the rejections, if the Patent Office is confronted with 2,400 claims, and they have limitations A, B, C, D, and E, but not all of them are in all 2,400 claims, some have A, B, some have C, D, and some have E, can they break them down into three different classes? Yes, they can. And reject each one on that basis? Well, assuming that they're correct in finding lack of specification for each and every element. For each and every element. Of those groupings. Now, what happens, whose responsibility is it to group at that point? Is it the applicant's or the PTO's? It's the PTO's. It's clearly what McDaniel holds. There is no way to read McDaniel except for the proposition that even where the applicant has waived a grouping, the board has an independent duty under C-7 to make a proper grouping based on common grounds of rejection. C-7 has two more. Common grounds of rejections or common grounds of degrees of specificity in the elements. This is where I think the law is very unclear. The grounds for rejection means what? The statutory grounds or the specific rejection itself saying it's rejected for, let's say, under 102 based on reference A. Is that a ground of rejection? No. What is a ground of rejection? No, I'm sorry. 102A based on reference A. Yes, that's a ground of rejection. What isn't a ground of rejection is 112 writ large. The board's position in this case is all of these rejections were on 112. And regardless of differences in limitations, we can reject them all by picking, plucking a few of the limitations, finding them not supported, and applying that finding, that conclusion, to all 2,400 claims, even though most of those claims did not share common limitations. And it can't be the law that that's what the board's obligation is. It would leave the reviewing courts at sea with basically no opinion from the administrative agency as to the adequacy of the 112 support. Anything else for Mr. Brass or any questions for Mr. Brass? Thank you. The reason the district court is at sea here is because Hyatt argued his appeal to the board the way he did. If Hyatt wanted to drill down to the specificity of the written discretionary rejection, then he should have argued about it. He didn't. McDaniel does not impose an independent obligation on the board to fix the errors and choices that an applicant makes in arguing his appeal. If Hyatt took the 549 application, if Hyatt thought he had 13 rejected limitations, then he should have argued about the claims containing them and where they were described. He didn't. He argued about one claim among 280, the notion that McDaniel should be read to create an obligation independent of how the applicant appeals his rejection. To fix those errors in group claims and consider arguments that have never been made is incorrect. All McDaniel says is under the onus of C7, you may not go so far as to violate section 6, which says you review adverse decisions of examiners. The only violation there in McDaniel was taking the 103 claim, 55 to 57, and in essence affirming it based on 102 grounds. That goes too far. Look at all the claims that were properly grouped in McDaniel. You had six independent paragraphs by the examiner, 102s, 103s. All of those claims were properly grouped in McDaniel. Why? Not because they shared common rejected limitations. The reality is, in addressing the merits of all of those claims under 102, only under the context of 53 is you have claims that were properly affirmed using the merits of which, as expressed in the 102 rejections, were never reached. Do you read the remand instruction as requiring all of these volumes of work or rather doing a little more? That is what you've been complaining about, about pulling the limitations together more explicitly. The district court here has said, PTO, you have misapplied and misinterpreted your regulation. You may not do it your way. You must do it our way, which is to say a limitation-specific grouping and then consider additional representative claims. This district court order is very clear. We must redo the board decision using additional representative claims. But why are you complaining if, in fact, there's an opportunity to select additional representative claims, perhaps with further briefing, that will resolve the substance of the patentability issues without requiring an essay on every one of the 2,400 claims? Your Honor, we maintain that under the governing regulation and in light of how Hyatt argued his appeal back in 2001, we did adjudicate the merits of the patentability of the rejection issue. By taking the claim or claims that Hyatt argued about, we do not believe that a reasonable reading of C7 and we believe that a reasonable reading of C7 is the one we have given it, which is we will consider your appeal to the extent you argue it. And we will take the claims you have given us and indicate it that represent your written description and adjudicate it. The district court's interpretation of our regulation puts some independent burden on us to do more than the applicant does. Our position is that our interpretation, which merely embodies that classic rule of waiver, where if you don't do it, we're not going to do it for you, is correct. And the district court's interpretation to the contrary is not. Well, I did want to ask on the interlocutory issue. Did the office request that this question be certified? We did not. But that should not control the issue of jurisdiction. We didn't do it in Hyatt 1, and there was jurisdiction. Why? Because we had a district court remand order that issued an important binding legal determination on the agency to do their business differently and to the exclusion of how we believe to do our business. And that imparts jurisdiction, as did David Hyatt, Finkelstein, Sullivan, and Southern California Edison, as well. My question was, what do you say about the district court's clear indication that I don't have an adequate record to decide whether you were right or wrong on your grounds for rejection? The adequacy of the record is determined. I mean, you're saying it's waiver. I mean, is that essentially what you're telling me? Is it? Rule C-7 is, in essence, a rule of waiver. And you referred to the rewrite of it, Judge Geringer said. The rewrite makes it more explicit. But it's always been about waiver. It's always been, as 192A makes clear, which is all part of the board rules governing board adjudication, which is we put in front of you the rejection. You may appeal it to the board, and you may make whatever arguments you make. If you want to argue the kitchen sink and you do it adequately, we will consider it. But if you decide not to, we are not obligated, the same as this court, to consider your appeal in greater depth than you have put it before us. I'm sympathetic with the district court. He's got 2,400 claims, potentially, that he may have to look at. The point is, he doesn't have to. Because in a 145, the scope is limited to that which the board considered, and all the board considered here were the representative claims. And the reason for that is because that was Hyatt's choice. He argued those claims, and that was what the board gave him. The district court read McDaniel much more broadly than you read it. That is correct. They read, with respect to the district court, because McDaniel is a slightly confusing decision, way too much into McDaniel. McDaniel simply says, to use his phrase, you may not waive your right under C-7, where there are new tantamount to new grounds, different statutory basis of rejection, 103s into 102s. That is not the situation here, and what the board here is eminently proper under the regulation. Any more questions? No. Any more questions? Thank you, Mr. McManus. Mr. Bass, the case was taken under submission.